UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONNY Y.,

              Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

_____

**DECISION AND ORDER**

23-CV-804S

       1.      Plaintiff Ronny Y.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

       2.      Plaintiff protectively filed his application with the Social Security Administration on January 21, 2020.  He alleged disability beginning on January 21, 2019, due to mental impairments characterized as bipolar disorder, major depressive disorder, generalized anxiety disorder, substance use disorders, and learning disability with difficulty reading and writing, as well as such physical impairments as bursitis in left knee, low back pain, obesity, left shoulder injury, hypertension, history of clavicle fractures, and hip problems.  His application was denied and he thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3.      On November 22, 2021, ALJ William M. Weir held a telephonic hearing due to COVID-19 pandemic at which Plaintiff—represented by counsel—and Vocational Expert Christina Boardman appeared and testified.  (R.[2] at 16, 33-72.)  At the time of the hearing, Plaintiff was a 50-year-old man with a limited education.  He performed such past relevant work as a building superintendent and construction worker II.  (R. at 26.)

4.      The ALJ considered the case *de novo* and, on May 3, 2022, issued a written decision denying Plaintiff's application for benefits.  (R. at 16.)  After the Appeals Council denied Plaintiff's request to review the ALJ's decision (R. at 1), he filed this action challenging the Commissioner's decision.[3]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 6, 9.)  Plaintiff filed his reply on January 24, 2024, stating that no formal reply was needed.  (Docket No. 10.)  This Court then took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's May 3, 2022, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

9.     The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not,

the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.    At Step Two, an impairment is deemed "severe" if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). An impairment or combination of impairments is found to be "not severe" when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on a claimant's ability to work. See SSR 85-28, 1985 SSR LEXIS 19 (1985); 20 C.F.R. § 416.922; Donahue v. Colvin, No. 6:17-CV-06838 (MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018). At this Step, the claimant bears the burden of establishing the severity of his impairment, "which is 'any impairment or combination of impairments which significantly limits [the claimant's] ability to do basic work.'" Miller v. Berryhill, No. 16CV6467, 2017 U.S. Dist. LEXIS 153578, at *20 (W.D.N.Y. Sept. 20, 2017); see 20 C.F.R. § 416.920(c).

4

11.     Proof of this severity requirement, however, is <u>de minimis</u> "and is meant only to screen out the weakest of claims."  <u>Herman S. v. Comm'r</u>, 577 F. Supp. 3d 190, 195 (W.D.N.Y. 2022); <u>see also</u> <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir. 1995).

12.     Although the claimant has the burden of proof at the first four steps, the Commissioner has the burden of proof at the fifth and final step.  <u>See</u> <u>Yuckert</u>, 482 U.S. at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

13.     The ALJ analyzed Plaintiff's claim for benefits under the five-step process set forth above.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date.  (R. at 18.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  mental impairments characterized as bipolar disorder, major depressive disorder, generalized anxiety disorder, and substance use disorders including alcohol and cocaine use disorders, but not Plaintiff's claimed physical impairments, that is obesity, knee bursitis, low back pain, or hypertension.  (R. at 19-20.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 20-22.)

5

14.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with stated limitations.  Specifically, the ALJ found that Plaintiff was limited to performing simple, repetitive one- and two-step tasks while he could not perform complex work or make changes to general work settings or tasks during the workday.  (R. at 22.)

15.     At Step Four, the ALJ found that Plaintiff could not perform his past relevant work.  (R. at 26.)  At Step Five, the ALJ posed hypotheticals to the Vocational Expert of a claimant sharing Plaintiff's age, education, work experience, and RFC.  The Expert opined that such a hypothetical claimant could perform such representative jobs as a cleaner, laundry laborer, and cleaner sweeper.  (R. at 26-27.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. at 27.)

16.     Plaintiff now argues that the ALJ failed to adequately account for all his non-severe physical limitations and failed to incorporate the overhead reaching limitation found by state agency physician D. Brauer, M.D.

17.     For the reasons that follow, this Court finds that the ALJ appropriately considered Plaintiff's claimed physical limitations and properly weighed the medical evidence and opinions in this record in concluding that these claimed conditions were not severe impairments.

18.     Plaintiff first objects to the ALJ's severity finding at Step Two of the sequential analysis finding that his physical impairments from knee bursitis, low back pain, hypertension, obesity, left shoulder pain, and rheumatoid arthritis were not severe. Plaintiff argues that these impairments were severe and supported this conclusion by relying on his testimony that his knees and ankles swelled and that he had low back pain.

6

Plaintiff also testified that he was in constant pain with some days better than others with limping some days and having trouble bending to the ground, crouching, stooping, and kneeling.  (R. at 22-23, 47-48, 50-51.)

19.    This Court finds, however, that the ALJ had substantial evidence supporting his consideration of these ailments.

20.    Addressing each ailment in turn, consultative examiner Nikita Dave, M.D., noted that Plaintiff's left shoulder had a somewhat reduced range of motion but his arms possessed normal strength.  (R. at 1071.)  Furthermore, Plaintiff denied seeking treatment for his shoulder.  (R. at 657, 1071, 1077, 1180, 1195.)

21.    The ALJ found that, despite Plaintiff's left shoulder pain, left knee bursitis, and low back pain, Plaintiff admitted that he had very little treatment for these ailments. The ALJ also noted that Plaintiff went to the hospital emergency room claiming shoulder pain as a drug seeking effort.  The ALJ concluded that the evidence did not support a severe shoulder impairment or reaching limitations related to the same.  (R. at 19.)

22.    As for his knee and lower back, the ALJ observed that Plaintiff reported using a cane occasionally, but he did not recall whether the cane was prescribed.  (Id.) The ALJ noted that Plaintiff's gait, straight leg raising, and leg strength each were normal and determined that examination findings revealed non-severe impairments despite Plaintiff's complaints of disabling pain.  (Id.)  The ALJ cited Plaintiff's January 19, 2020, x-ray of his left knee which revealed small to moderate knee effusion and small superior and inferior patella enthesophytes.  (R. at 672-73; see R. at 19.)  On September 10, 2021, however, a further x-ray of that knee was negative.  (R. at 1200, 1203; see R. at 19.)

23.     Meanwhile, on November 24, 2020, Dr. Dave examined Plaintiff.  During this examination, Plaintiff did not volunteer that he had problems with his knee, shoulder, and low back until asked and stated that he did not seek a specialist for these problems. (R. at 1069.)  Plaintiff said that he used a cane as needed when having a "bad day" but he did not recall when the cane was prescribed and he did not use it during the examination for in-room mobility or transfers.  (R. at 1070.)

24.     Dr. Dave found that Plaintiff's range of motion for his shoulders showed forward flexion and abduction 135 to 140 degrees without tenderness or swelling.  (R. at 1071.)  The doctor found that "[t]here may be mild limitations for prolonged walking" while noting that Plaintiff had no acute distress and had a normal gait and stance.  (R. at 1070, 1072.)

25.     The ALJ found that the doctor's examination findings revealed only non-severe impairments.  (R. at 24.)  Nevertheless, the ALJ reviewed this evidence in the light most favorable to Plaintiff and limited him to medium exertion work, that is defined in the regulations as the ability to lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. § 416.967(c).  (R. at 19.)

26.     Moreover, the ALJ relied upon Plaintiff's activities of daily living such as his maintaining personal hygiene, preparing simple meals, grocery shopping, and performing odd chores such as lawn mowing, which suggested to the ALJ that Plaintiff had a greater degree of functional capacity.  Considering all his impairments (severe or not), the ALJ concluded that Plaintiff could perform work despite the claimed limitations.  (R. at 23.)

27.     As for Plaintiff's knee bursitis, back pain, and shoulder ailments, this Court first finds that Plaintiff met the de minimis severity requirement at Step Two for these

otherwise non-severe impairments.  The ALJ, however, considered these three ailments (among his other non-severe conditions) in determining the limitations in the RFC at Step Three of the analysis.  Further, the ALJ viewed the evidence for these ailments in the light most favorable to Plaintiff thus limiting him to medium exertion work.  (R. at 19-20.)

28.    This Court finds that Plaintiff bears the burden of proof at the first four steps of the analysis but has not done so by failing to refute the ALJ's finding that he admitted to seeking "very little treatment" for his bursitis, shoulder condition, and low back pain while using a possibly nonprescribed cane.  (R. at 19; see R. at 1070.)  Plaintiff apparently sought hospital treatment of his shoulder to obtain drugs.  He also does not refute the finding that he had normal strength in his arms.  (See R. at 1071.)  Furthermore, Plaintiff has not shown any occupational limitations arising from these conditions.

29.    Thus, the record supports the ALJ's finding that Plaintiff's physical ailments were not severe.  Plaintiff's Motion for Judgment on the Pleadings for these ailments is denied.

30.    Plaintiff next contends that the ALJ disregarded his hypertension.

31.    The ALJ, however, found that Plaintiff was treated for elevated blood pressure but there was no evidence of ongoing issues arising from hypertension.  (R. at 20.)  The ALJ nevertheless declared that he considered Plaintiff's hypertension with his other impairments in determining his RFC.  (R. at 20.)

32.    From this record, this Court finds that Plaintiff has not shown the debilitating effects from his hypertension to meet the de minimis severity standard at Step Two of the analysis.   (R. at 20.)   The sole basis for Plaintiff's hypertension claim arises from

Dr. Dave's opinion.  The record, however, reveals no limitation from hypertension and only one instance of elevated blood pressure.  Although Plaintiff rests upon Dr. Dave's assessment of his hypertension (<u>see</u> R. at 1069, 1072), this opinion also did not address the severity or any limitations arising from his hypertension.

33.     While Dr. Dave diagnosed Plaintiff with hypertension during his examination on November 24, 2020, he found that Plaintiff's blood pressure was 110/70.  (R. at 1069, 1070, 1072.)  Plaintiff reported to Dr. Dave that he had hypertension for a few months.  (R. at 1069.)  Dr. Dave found that Plaintiff had mild limitations for prolonged walking but did not make any connection between Plaintiff's hypertension and prolonged walking.  (R. at 1072.)

34.     The record showed that Plaintiff generally had a normal[4] blood pressure.  For instance, on July 18, 2018, Melitta Mendonca, PA of WNY Medical, PC, examined Plaintiff and noted that his blood pressure was 121/71.  (R. at 802.)

35.     On January 19, 2020, Plaintiff was admitted to Buffalo General Medical Center Emergency Room for treatment of dizziness, left arm numbness, and swelling with elevated blood pressure reading of 148/99.  (R. at 652, 656, 657, 664.)  However, Plaintiff was discharged later that day with a normal blood pressure reading of 130/89.  (R. at 659.)  In diagnosing his dizziness and chest pain, Deborah Swain, M.D., found that Plaintiff's cardiac silhouette and central pulmonary vasculature were within normal limits.  (R. at 651.)

---

[4] For the definition of a "normal" blood pressure, see <u>High Blood Pressure – Understanding the Silent Killer</u>, https://www.fda.gov/drugs/special-features/high-blood-pressure-understanding-silent-killer (last visited August 13, 2024) (normal pressure is 120/80 mm. of mercury or lower); Clayton L. Thomas, ed., <u>Taber's Cyclopedic Medical Dictionary</u> 226 (16th ill. ed. 1989) (normal, relaxed, sitting adult's systolic blood pressure is between 100 and 140 mm. of mercury).

36.     On October 14, 2020, however, Plaintiff denied having hypertension or any other significant medical conditions.  (R. at 1097, 1173.)  Two days later, Plaintiff had a blood pressure of 112/71.  (R. at 1173, 1195.)  On April 21, 2021, Plaintiff had a blood pressure reading of 128/81.  (R. at 1173, 1189.).  On April 26, 2021, Brendan Farnand, PA, of Urban Family Practice, P.C., diagnosed Plaintiff with hypertension and prescribed medication which had no ill effects but rated his hypertension symptoms as mild in severity while finding his blood pressure of 111/70.  (R. at 1172, 1183, 1184.)  On August 11, 2021, PA Farnand found Plaintiff's blood pressure was 134/92.  (R. at 1172, 1179.)

37.     This Court further notes that Plaintiff's own treating physician Raul Vazquez, M.D., of Urban Family Practice, did not include hypertension as a condition he was treating in his April 21, 2021, report of Plaintiff's care despite PA Farnand's diagnosis on April 26, 2021.  (But cf. R. at 1091, 1183.)  Otherwise, the record shows that Plaintiff's hypertension was mild with no identified ill effects therefrom and was controlled with medication.  The ALJ thus properly considered this ailment was non-severe.  Plaintiff's Motion for Judgment on the Pleadings on this condition is denied.

38.     Plaintiff next argues that the ALJ also failed to account for his obesity in the RFC.  As noted by the ALJ, Plaintiff weighed 219 lbs., was 5'8" tall, and thus had a body mass index of 33.3.  (R. at 19; see R. at 159, 351.)

39.     The ALJ, however, found that there was no evidence of more than minimal functional limitation due to obesity and factored Plaintiff's obesity by limiting him to medium exertion work.  (R. at 19, citing R. at 159, 351.)

40.     Obesity "is not a listed impairment; however, the functional limitations caused by the [medically determinable impairment] of obesity, either alone or in combination with another impairment(s), may medically equal a listing."  Social Security Ruling, SSR 19-2p; Titles II and XVI:  Evaluating Cases Involving Obesity, 84 Fed. Reg. 22,924, 22,924 (May 20, 2019); see Guadalupe v. Barnhart, No. 04 CV 7644 HB, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) (the ALJ should consider obesity in combination with other impairments); see also 20 C.F.R. § 416.926 (medical equivalence).  Under SSR 19-2p, "if the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe."  84 Fed. Reg. at 22,925.  The ALJ establish obesity as a medically determinable impairment "by considering objective medical evidence (signs, laboratory findings, or both) from an [acceptable medical source. The ALJ] will not use a diagnosis or a statement of symptoms to establish" the existence of a medically determinable impairment.  Id.

41.     This Court finds that Plaintiff has not shown any limitations arising from his obesity either by itself or in conjunction with other ailments.  Despite arguing that the ALJ did not account for obesity and its impact on his back and knees at Step Four of the sequential analysis, Plaintiff nevertheless has the burden of proving disability therefrom at that Step.  Thus, as for this ground, Plaintiff's Motion for Judgment on the Pleadings is denied.

42.     Plaintiff next claims that he suffered from rheumatoid arthritis and osteoarthritis and that the ALJ did not consider these ailments despite his medical record establishing these ailments and supporting greater limitations.   He contends that

radiology established limitations in his left shoulder (see R. at 173, 1077) and faults the ALJ for making his own lay interpretation of the medical record and improperly disregarding the radiology results, and issuing a decision that was contrary to the supportability of and consistency with evidence.

43.     Rheumatoid arthritis is a form of arthritis with inflammation of the joints, stiffness, swelling, cartilaginous hypertrophy, and pain.   Taber's Cyclopedic Medical Dictionary, supra, at 1603.

44.     This Court finds that the medical record for Plaintiff's alleged rheumatoid arthritis does not show a disabling impairment.  Specifically, on January 23, 2018, John Bauers, M.D., of WNY Medical, PC, examined Plaintiff for his complaints of pain in his right wrist, knee, and ankle.  Noting some swelling in that wrist, crepitus of the right knee, and tenderness of the right ankle, Dr. Bauers found that Plaintiff generally appeared healthy and well developed with no signs of apparent distress, and ordered rheumatoid factor bloodwork.  (R. at 914-15.)  Subsequent examinations, however, revealed normal findings and negative rheumatology bloodwork.  (R. at 781, 802-03, 828, 846-47, 870-71, 884-85, 889, 902.)  On February 26, 2018, Dr. Bauers found that there was no evidence of inflammatory or autoimmune process in Plaintiff's right wrist or ankle, with Plaintiff having rheumatoid factor below 14, a negative result.  (R. at 885, 889.)

45.     On July 17, 2018, PA Mendonca noted Plaintiff's diagnosis for osteoarthritis in 2012 but found no documentation or report from a specialist confirming that diagnosis. (R. at 801.)  PA Mendonca noted that Plaintiff then appeared healthy and well-developed without any sign of apparent distress.  (Id.)

46.     On October 16, 2020, PA Farnand examined Plaintiff with Plaintiff reporting that his shoulder pain was mild with activity.  PA Farnand found this pain was acute, prescribed x-rays, and told Plaintiff that treatment of the pain would not change the natural history of his osteoarthritis.  (R. at 1193, 1196-97.)

47.     On December 23, 2020, Dr. Shifteh of the IMA Group x-rayed Plaintiff's shoulder and found "large bulky osteophytes and joint space loss at the glenohumeral joint is suspected likely osteoarthropathy," concluding that Plaintiff had advanced osteoarthropathy of that joint.  (R. at 1077.)

48.     In his letter of April 21, 2021, Dr. Vazquez diagnosed Plaintiff with rheumatoid arthritis, among other conditions.  (R. at 1091.)  PA Farnand also examined Plaintiff that day and found that his rheumatoid arthritis was stable as he discontinued Prednisone.  (R. at 1190.)

49.     Meanwhile, consultative examiner Dr. Dave noted that Plaintiff's range of motion of his shoulders showed forward flexion and abduction 135 to 140 degrees without tenderness or swelling, but Plaintiff did not have redness, heat, swelling, or effusion.  (R. at 1071.)

50.     This Court finds that the record reveals that Plaintiff has not established that his rheumatoid arthritis limited him.  This record shows that Plaintiff merely cites his subjective complaints while also containing normal clinical examination findings and negative rheumatology bloodwork.  (R. at 781, 802-03, 828, 846-47, 870-71, 884-85, 889, 902.)  Thus, rheumatoid arthritis was not a medically determinable impairment here because it was based on Plaintiff's subjective reports of his symptoms and not on objective evidence contained in the record.  Cf. 20 C.F.R. § 416.921.  Further, this record

14

shows that any impairment Plaintiff suffered was mild, only limited his range of motion in his shoulders, and did not produce other symptoms.  Importantly, this record does not show how this condition limited Plaintiff's ability to work.

51.     Therefore, Plaintiff's Motion for Judgment on the Pleadings on this ground is denied.

52.     Finally, Plaintiff argues that the ALJ failed to incorporate the overhead reaching limitation found by state examiner Dr. Brauer.  Indeed, on January 5, 2021, Dr. Brauer reviewed Plaintiff's medical records including his January 2020 examination report and December 2020 x-ray report, and noted that these x-rays showed that Plaintiff's left shoulder had overhead reaching limitations which restricted his range of motion.  Dr. Brauer found that Plaintiff suffered from advanced osteoarthropathy of the glenohumeral joint, restricting him to limited overhead reach.  (R. at 172, 173, 1081.)

53.     Plaintiff argues that the ALJ should have relied upon Dr. Brauer's shoulder overhead reach limitations.  The ALJ, however, found Dr. Brauer's opinion unpersuasive because it was not consistent with or supported by the examination findings of Dr. Dave or other examinations and objective findings in the record.  (R. 25.)  The ALJ found that the evidence showed that Plaintiff had merely non-severe physical impairments.  (R. at 24.)  Nevertheless, the ALJ viewed the evidence in the light most favorable to Plaintiff and found that he could perform medium exertion work.  (R. at 24-25.)

54.     This Court notes that the ALJ has the discretion to resolve conflicts within the evidence, Veino v. Barnhart, 317 F.3d 578, 588 (2d Cir. 2002), and this Court defers to the ALJ's reasonable interpretation of the evidence.  McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014).  Under pertinent Social Security regulations for this post-March 27,

2017, application, the Commissioner does not defer to any medical opinion.  20 C.F.R. § 416.920c(a).  Rather, under these regulations, the ALJ evaluates medical opinions for their persuasiveness, judged on their supportability by objective medical evidence and their consistency with other medical and nonmedical sources, the most important factors in determining its persuasiveness.  Id. § 416.920c(a), (b)(2), (c)(1)-(2).

55.     This case presents the difference in opinion on the severity of Plaintiff's limitations in his left shoulder.  Where there are conflicting opinions and the ALJ resolved these conflicts, this Court finds that this resolution is supported by substantial evidence. The evidence of Plaintiff's reduced range of motion in his left shoulder is contrasted by his normal arm strength, the lack of tenderness or swelling, and the absence of medical treatment of the shoulder supporting the severity of his shoulder impairment.  (R. at 19, 657, 1071, 1077, 1180, 1193.)  Thus, there is no basis for questioning the ALJ's present determination.  See Perales, 402 U.S. at 399; Veino, 312 F.3d at 588.

56.     Thus, Plaintiff's Motion for Judgment on the Pleadings on this ground also is denied.

57.     Accordingly, having reviewed the ALJ's decision and considered Plaintiff's argument, this Court finds that the ALJ appropriately weighed the medical evidence and opinion evidence in this record.  Although Plaintiff met the de minimis standard for the severity of these non-severe impairments at Step Two of the sequential analysis, the ALJ appropriately considered these disputed impairments in the subsequent steps in finding that Plaintiff could perform medium exertion work.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        September 20, 2024
              Buffalo, New York


                                        s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                    United States District Judge